UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARIA GUADALUPE MARTIN DEL CAMPO, | ) ) | No. EDCV 15-954 AGR |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Del Campo filed this action on May 14, 2015.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 10, 13.)  On November 23, 2015, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

I.

## PROCEDURAL BACKGROUND

On November 8, 2012, Del Campo filed an application for disability insurance benefits, alleging an onset date of June 19, 2012.  Administrative Record ("AR") 20. The application was denied initially and on reconsideration.  AR 20, 61, 73.  Del Campo requested a hearing before an Administrative Law Judge ("ALJ").  On June 3, 2014, the ALJ conducted a hearing at which Del Campo, a medical expert and a vocational expert testified.  AR 35-60.  On July 11, 2014, the ALJ issued a decision denying benefits.  AR 17-30.  On March 18, 2015, the Appeals Council denied the request for review.  AR 1-6. This action followed.

II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

### III.

### DISCUSSION

#### A.   Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

#### B.   The ALJ's Findings

The ALJ found that Del Campo met the insured status requirements through December 31, 2018.  AR 22.  Following the five-step sequential analysis applicable to disability determinations, *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Del Campo had the severe impairments of fibromyalgia, reactive depression and psychological reaction to physical impairment.  AR 22.

The ALJ found that Del Campo had the residual functional capacity ("RFC") to perform less than the full range of medium work.  She can sit, stand or walk six hours of an eight-hour workday; lift/carry 50 pounds occasionally and 25 pounds frequently; occasionally climb stairs, balance, kneel, stoop, crouch and crawl; never climb ladders, scaffolds or ropes; and frequently perform fine manipulation bilaterally.  She is able to do simple repetitive tasks with no safety operation of others; no hazardous or fast moving machinery and no fast paced work.  AR 24.  She is unable to perform any past relevant work, but there are jobs that exist in significant numbers in the national

---

[1]  The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsbury*, 468 F.3d at 1114.

1  economy that she could perform such as dining room attendant, cleaner (hospital) and

2  machine packager.  AR 29-30.

3         **C.**    **Treating Physician's Opinion**

4        Del Campo contends the ALJ erred in rejecting the opinion of her treating

5  psychiatrist.

6        An opinion of a treating physician is given more weight than the opinion of

7  non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an

8  uncontradicted opinion of a medically acceptable treating source, an ALJ must state

9  clear and convincing reasons that are supported by substantial evidence.  *Bayliss v.*

10  *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When a treating physician's opinion is

11  contradicted by another doctor, "the ALJ may not reject this opinion without providing

12  specific and legitimate reasons supported by substantial evidence in the record.  This

13  can be done by setting out a detailed and thorough summary of the facts and conflicting

14  clinical evidence, stating his interpretation thereof, and making findings."  *Orn*, 495 F.3d

15  at 632 (citations and quotation marks omitted).  "When there is conflicting medical

16  evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas v.*

17  *Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

18        Dr. Colomer-De Saca completed a Psychiatric/Psychological Impairment

19  Questionnaire dated September 30, 2013.  AR 435-42.

20        The ALJ gave little weight to Dr. Colomer-De Saca's opinion because (1) there

21  are no treatment notes in the record to support the opinion; (2) the opinion is

22  inconsistent with her records to the extent they exist; and (3) the opinion is inconsistent

23  with other objective evidence.  AR 27.

24        Del Campo concedes that none of Dr. Colomer-De Saca's treatment notes are in

25  the record.  JS 5.  Del Campo also appears to concede that the ALJ correctly observed

26  an inconsistency between Dr. Colomer-De Saca's opinion, which stated she began

27

28

1  treating Del Campo in November 2012, and the medication log, which indicated that

2  medications had been dispensed since January 2012.  JS 5 & n.5; AR 27, 404, 435.

3       Del Campo argues, however, that the ALJ incorrectly found an inconsistency

4  between Dr. Colomer-De Saca's opinion and the other objective evidence.  Dr.

5  Colomer-De Saca opined that Del Campo has major depression with a Global

6  Assessment of Functioning (GAF) of 50.[2]  She stated that there were no test results to

7  support her findings.  AR 436.  She found that Del Campo had marked limitations in her

8  ability to understand and carry out detailed instructions, maintain attention and

9  concentration for extended periods, perform activities within a schedule and maintain

10  regular attendance, sustain ordinary routine without supervision, work in proximity to

11  others without being distracted by them, complete a normal workweek without

12  interruptions from psychologically based symptoms and perform at a consistent pace,

13  be aware of normal hazards, travel to unfamiliar places or use public transportation, set

14  realistic goals and make plans independently.  AR 438-40.  Del Campo was moderately

15  limited in every other area.  AR 438-39.

16       The ALJ's finding that Dr. Colomer-De Saca's opinion was inconsistent with the

17  objective evidence is well supported by substantial evidence.  The examining

18  psychiatrist found mild depression and mild anxiety.  AR 410.  As the ALJ noted, in

19  terms of memory and attention, Del Campo was able to do serial 3s and 7s, and her

20  object recall was 3/3 after three and five minutes.  She was able to perform simple

21  mathematical calculations.  Her cognitive functioning was within normal limits and

22  reasoning was intact.  AR 23, 26-27, 408-10.  In general, Dr. Abejuela assessed none

23  to mild impairment in occupational and social functioning.  Del Campo had no

24

25  _____

26       [2]  The current Diagnostic and Statistical Manual of Mental Disorders ("DSM") no
longer uses GAF scores.  Previously, the GAF scale took into account psychological,
social and occupational functioning.  A GAF of 41-50 indicated serious symptoms or

27  any serious impairment in social, occupational or school functioning (e.g., no friends,
unable to keep a job).  DSM IV-TR 34 (4th ed.).

28

impairment in her ability to understand and carry out simple instructions, and mild impairment in her ability to understand and carry out complex instructions, respond to coworkers and supervisors, and respond to changes in routine work settings.  She had no mental restrictions in daily activities, mild difficulties in social functioning, and mild impairment in concentration, persistence and pace.  AR 26-27, 410-11.  The ALJ gave lesser weight to Dr. Abejuela's opinion than to the medical expert, who had the benefit of reviewing updated medical evidence after the date of the psychological examination.  AR 26-27.

As the ALJ also noted, at a subsequent neurological examination Del Campo's recall was again 3/3 after one and five minutes.  Her immediate, remote and recent memory were not impaired and her concentration was not reduced.  AR 23, 25, 414.

The medical expert testified that, from an objective perspective, Del Campo is limited to moderately complex tasks and is precluded from safety related operations, hazardous or fast moving machinery, and fast paced work.  AR 57.

The ALJ provided specific and legitimate reasons supported by substantial evidence for discounting Dr. Colomer-De Saca's opinion.  The ALJ did not err.

**E.    Credibility**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"

1    *Brown-Hunter v. Colvin*, 798 F.3d 749, 755 (9th Cir. 2015) (citation omitted)**,** *amended*

2    2015 WL 6684997 (Nov. 3, 2015); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir.

3    2014).  "A finding that a claimant's testimony is not credible 'must be sufficiently specific

4    to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony

5    on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding

6    pain.'" *Brown-Hunter*, 798 F.3d at 755 (citation omitted). "'General findings are

7    insufficient; rather, the ALJ must identify what testimony is not credible and what

8    evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

9         In weighing credibility, the ALJ may consider factors including:  the nature,

10   location, onset, duration, frequency, radiation, and intensity of any pain; precipitating

11   and aggravating factors (e.g., movement, activity, environmental conditions); type,

12   dosage, effectiveness, and adverse side effects of any pain medication; treatment,

13   other than medication, for relief of pain; functional restrictions; the claimant's daily

14   activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346

15   (citing Social Security Ruling ("SSR") 88-13) (quotation marks omitted).[3]  The ALJ may

16   consider:  (a) inconsistencies or discrepancies in a claimant's statements; (b)

17   inconsistencies between a claimant's statements and activities; (c) exaggerated

18   complaints; and (d) an unexplained failure to seek treatment.  *Thomas*, 278 F.3d at

19   958-59.

20        The ALJ found that Del Campo's medically determinable impairments could

21   reasonably be expected to cause the alleged symptoms, but that her statements

22   concerning the intensity, persistence and limiting effects were "not entirely credible."

23   AR 24.  The ALJ relied on three reasons: (1) objective medical evidence did not support

24   the severity of her allegations; (2) conservative treatment for pain; and (3)

25   _____

26        [3]  Social Security rulings do not have the force of law.  Nevertheless, they "constitute
     Social Security Administration interpretations of the statute it administers and of its own
27   regulations," and are given deference "unless they are plainly erroneous or inconsistent
     with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).
28

inconsistencies between Del Campo's activities of daily living and the alleged severity of pain.  AR 24-26.

The ALJ may properly consider the lack of objective medical evidence supporting the alleged degree of limitations, but it cannot form the sole basis for discounting a claimant's credibility.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  The ALJ's finding that the objective mental health evidence did not support the alleged severity of Del Campo's allegations is supported by substantial evidence as discussed above. With respect to Del Campo's physical symptoms, the ALJ noted that the May 2014 report of an examining physician retained by the claimant indicated that although Del Campo claimed to have pain of 9-10/10, she did not appear to be in acute pain and was able to sit through an hour-long conversation without much difficulty.  AR 26, 28, 448-49.  Her pain was "out of proportion to her examination" (AR 449), which revealed nonspecific tenderness all over but was otherwise negative.[4]  AR 26, 448-49.  The ALJ also relied upon the report of an examining neurologist, who also observed that Del Campo did not appear to be in acute distress and her examination "is actually unremarkable."  AR 27, 415-16.  She stood slowly from a seated position, she reported discomfort with motion of the shoulders and there was slight tenderness at the MCP and PIP joints.  AR 27, 415-16.  The neurologist assessed that Del Campo was capable of medium work and could sit/stand/walk for six hours out of an eight-hour workday.  AR 416.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted).  As the ALJ noted, Del Campo takes over the counter medication for pain.  AR 26, 43.

---

[4]  As the ALJ noted, the examining physician stated that he filled out a fibromyalgia questionnaire "based on her subjective complaints and objective findings on my exam." AR 450.

1  An ALJ may consider a claimant's daily activities, and inconsistent statements

2  about those activities, when weighing credibility.  *Bunnell*, 947 F.2d at 346.  The ALJ

3  found that Del Campo's activities of daily living were inconsistent with the severity of her

4  pain.  AR 26.  Del Campo takes care of herself, her elderly mother and her dog,

5  including taking her dog for walks.  She cooks complete meals, does household chores

6  and goes shopping.  She uses the computer to pay bills.  AR 183-85, 407, 414.

7  The ALJ's credibility finding is supported by substantial evidence.  "If the ALJ's

8  credibility finding is supported by substantial evidence in the record, we may not engage

9  in second-guessing."  *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec.*

10  *Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).  The ALJ did not err.

11  **IV.**

12  **ORDER**

13  IT IS HEREBY ORDERED that the decision of the Commissioner is

14  affirmed.

15  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and

16  the Judgment herein on all parties or their counsel.

17

18  DATED: January 21, 2016

19  _____
    ALICIA G. ROSENBERG
    United States Magistrate Judge

20

21

22

23

24

25

26

27

28

9